United States Court of Appeals,

Eleventh Circuit.

No. 95-3305.

Richard B. GOSSARD, Joyce Gossard, Barney Dewees, John Daly, Nursefinders of Sarasota, Inc., Nursefinders of St. Petersburg, Inc., Nursefinders of Mobile, Inc., Plaintiffs-Appellants,

v.

ADIA SERVICES, INC., Defendant-Appellee.

Sept. 4, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 91-11-CV-T-17B), Thomas G. Wilson, Judge.

Before TJOFLAT and BARKETT, Circuit Judges, and GODBOLD, Senior Circuit Judge.

BARKETT, Circuit Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO ARTICLE V, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION. TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

In this tortious interference claim, appellants Richard Gossard, Joyce Gossard, Barney Dewees, John Daly, Nursefinders of Sarasota, Inc., Nursefinders of St. Petersburg, Inc., and Nursefinders of Mobile, Inc. (collectively "Gossard") appeal the district court's entry of judgment as a matter of law in favor of Adia Services, Inc. ("Adia") notwithstanding the jury verdict which resolved all factual issues in favor of Gossard. The order was based on two findings: (1) Adia did not "induce or otherwise cause" a breach of contract under Florida law; and (2) the jury's $2,488,000 compensatory damage award was based on an erroneous legal theory. This case presents an important issue of Florida law that has not been addressed by the Supreme Court of Florida. Thus, we believe that the issue is appropriate for resolution by Florida's highest court. We therefore defer our decision in this case pending certification of the question to the Supreme Court of Florida. *See Varner v. Century Finance Co., Inc.,* 720 F.2d 1228 (11th Cir.1983).

Background

In 1974, Larry Carr founded a business which provided nurses to health care facilities and private clients on a temporary basis. Within four years, Carr began selling franchises subsequently named Nursefinders, Inc. In May of 1986, Richard Gossard purchased a franchise which covered, among other areas, Florida's west coast. The franchise agreement contained an exclusivity clause which provided that neither Nursefinders "nor any person or firm authorized or licensed by it shall establish an office for the purposes" of providing competing services within the franchise territory. However, Carr and Gossard testified that during negotiations over the franchise, they agreed that neither Nursefinders, nor its parent or affiliates, would provide similar services within the franchise territory.

In the beginning of 1987, Adia purchased Nursefinders. In June of 1988, Adia purchased Star-Med, a company likewise involved in the field of temporary nursing help.

Gossard then filed this action alleging that by purchasing Star-Med, Adia caused Nursefinders to violate its promise of noncompetition within a franchisee's territory. In defense, Adia argued that it did nothing to interfere with and was under no contractual or fiduciary duty to abide by the exclusivity clause of the franchise agreement between Nursefinders and Gossard. The jury found for Gossard on the factual issues and awarded $2,488,000. However, the district court entered judgment in favor of Adia after determining that "[t]he evidence indisputably shows that, with respect to the franchise agreements, the defendant, [Adia], took no action at all toward Nursefinders." As for the damage award, the court determined that the jury erroneously based the award on Gossard's expert testimony which incorrectly calculated the damages based on a contract claim rather than a tort claim.

Discussion

In this diversity action, we are required to apply the substantive law of Florida, the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

To define the tort of "intentional interference with a contract" Florida applies the Second Restatement of Torts:

2

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*See Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 814 (Fla.1994); Restatement (Second) of Torts, § 766 (1977).

There is no evidence in the record which suggests that Adia "induced" Nursefinders to breach the franchise agreement. Therefore, the question is whether Adia "otherwise caused" Nursefinders to violate the franchise agreements. Comment h under § 766 explains "otherwise causing" as referring to the situation where the tortfeasor "leaves [the contracting party] no choice," that is, the tortfeasor affirmatively prevents the party from performing the terms of the contract. In this case, Gossard contends that Adia's purchase of StarMed caused Nursefinders to violate the franchise agreement it held with Gossard.

There is no case law directly addressing this issue.[1] "Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie*[2] "guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. Of AMCA Intern., Inc.,* 52 F.3d 913, 916-17 (11th Cir.1995)(citing *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 396 (5th Cir.) *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986)). Thus we certify the following question to the Florida Supreme Court:

WHETHER FLORIDA LAW RECOGNIZES A CLAIM FOR TORTIOUS INTERFERENCE AGAINST A CORPORATION WHICH PURCHASES AS A SUBSIDIARY A CORPORATION WHICH HAS A PREEXISTING OBLIGATION NOT TO COMPETE AGAINST ITS FRANCHISEE, PLAINTIFF HEREIN, AND SUBSEQUENTLY PURCHASES ANOTHER SUBSIDIARY WHICH IS IN DIRECT COMPETITION WITH THE FRANCHISEE.

---

[1]Contrary to Gossard's contention, his cases are distinguishable: They all involve at least a direct impact upon a contracting party's ability to perform its obligations.

[2]*Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Our particular phrasing of the question is not intended to limit the Florida Supreme Court's inquiry. The entire record in this case, together with copies of the briefs, shall be transmitted to the Supreme Court of Florida.

QUESTION CERTIFIED.